May, Judge,
dissenting.
I would address Bass’s statutory construction argument on the merits and vacate his guilty finding of Class C misdemeanor OWI, rendering moot the double jeopardy issue on which the majority relies. Accordingly, I dissent.
The Class C misdemeanor OWI for which Bass was found guilty required only that he “operate[d] a vehicle with a controlled substance listed in schedule I or II of IC 35-48-2 or its metabolite” in his body. Ind. Code § 9-30-5-l(c). The legislature also created a statutory defense to this version of OWI: “It is a defense to subsec *1104 tion (c) that the accused person consumed the controlled substance under a valid prescription or order of a practitioner (as defined in IC 35-48-1) who acted in the course of the practitioner’s professional practice.” Ind. Code § 9-30-5-l(d).
At the conclusion of Bass’s bench trial, the trial court stated:
All right Mr. Bass the statute says ... a person who operates a vehicle with a controlled substance listed in schedule I or II or it’s [sic] metabolite in the person’s body commits a [C]lass C misdemeanor and it goes on further to say it is a defense to subsection C that the accused person consumed the controlled substance under a valid prescription or order of a practitioner who acted in the course of the practitioner’s professional practice. But it is not a defense if you are not able to, if taking that medication puts you in a position where you can cause harm to others. So as to the A misdemeanor I will find that you are guilty of operating under the influence, that you were intoxicated and it was in a manner in which a person was endangered. You know passing out in the middle of an intersection is a danger. There’s no doubt about that and although I’ve not seen your prescriptions, even if I take you at your word, and I will that you have been prescribed those medications the condition that you were in is a condition that even though you may have prescriptions for those medications, it’s abundantly clear to me that you couldn’t have been taking them in the manner in which they were prescribed on that particular occasion. If you had been on those drugs for three months up to that point and had not had any issues, based upon the officer’s testimony, the witness’s testimony who stopped to assist you, you were under the influence of those drugs in such a manner that you ought not to have been behind the wheel of a car. So I am going to And that you are guilty both of the A and C misdemeanor.
(Tr. at 57-58) (emphasis added).
Bass argues he cannot be guilty of the Class C misdemeanor because the trial court found Bass had “been prescribed those medications[,]” (id. at 58), which Bass claims is the equivalent of finding the medications were “consumed ... under a valid prescription” as is required for the statutory defense. Ind. Code § 9-30-5-l(d), However, the remainder of the trial court’s statement—“you couldn’t have been taking them in the manner in which they were prescribed on that particular occasion,” (id. at 58)—indicates the trial court believed the statutory phrase “consumed ... under a valid prescription” meant Bass could not rely on the statutory defense unless Bass proved he had taken the medications in accordance with the instructions provided on the valid prescriptions.
Bass’s argument raises a question of statutory construction,[4] “which is a matter of law and is reviewed de novo.” Suggs v. State, 51 N.E.3d 1190, 1193 (Ind. 2016).
“When construing a statute, our primary goal is to ascertain the legislature’s intent. To discern that intent, we look first *1105 to the statutory language itself and give effect to the plain and ordinary meaning of the statutory terms. If a statute is unambiguous, that is, susceptible to but one meaning, we must give .the statute its clear and plain meaning. However, if a statute admits of more than one interpretation, then it is ambiguous; and we thus resort to rules of statutory interpretation so as to give effect to the legislature’s intent. For example, we read the statute as a whole, avoiding excessive reliance on a strict literal meaning or the selective reading of individual words. And we seek to give a practical application of the statute by construing it in a way that favors public convenience and avoids an absurdity, hardship, or injustice. Further, criminal statutes must be strictly construed against the State, and may not be enlarged beyond the fair meaning of the language used....”
Id. at 1193-94 (internal citations and quotations omitted).
At issue is the meaning of the phrase “consumed ... under a valid prescription” as found in Indiana Code Section 9-30-5-1(d). The trial court interpreted that phrase to mean “consumed in accordance with a valid prescription,” and Bass argues the phrase means “had a valid prescription for the medications consumed.” Because the meaning of that phrase is ambiguous, it should be construed in a way that gives effect to the legislature’s intent while also avoiding “absurdity, hardship, or injustice.” Suggs, 51 N.E.3d at 1194.
Chapter 5 of Indiana Code Article 9-30 is denominated “Operating a Vehicle While Intoxicated.” Section 1 of that Chapter defines three crimes, and the first two of those are versions of OWI based on the amount of alcohol found in a driver’s breath or blood. See Ind. Code § 9-30-5-1(a) (defining alcohol concentration equivalent of .08 to .15 as a Class C misdemean- or) and Ind. Code § 9-30-5-1 (b) (defining alcohol concentration equivalent at or above .15 as a Class A misdemeanor). The alcohol concentration equivalents used to define those crimes were established, and later modified, based on research conducted to determine the impáct of alcohol—a substance that is legal to possess-and consume—on a person’s ability to drive.
The third crime defined in Section 1, in contrast, criminalizes‘driving’as “intoxicated” if a person has any amount of a schedule I or II controlled substance, or its metabolite, in His or her body. See Ind. Code § 9-30-5-1(c). The State is not required to prové, for purposes of a conviction under that definition, that a driver was intoxicated or that the amount of metabolite in the person’s blood might or did have had any impact whatsoever on the person’s ability to drive. Thus, the legislature defined the crime so broadly that it criminalizes legal behavior—driving in a manner that does- not endanger anyone after consumption of medication for which one has a valid prescription. Because we are to construe criminal statutes against the State, see Suggs, 51 N.E.3d at 1194, I would interpret the defense. provided in subsection (d) broadly, as a straightforward attempt by the legislature to protect citizens who legally possess prescription medications from the embarrassment of facing criminal proceedings for consuming those prescriptions. Thus, I agree with Bass that, for purposes of Indiana Code Section 9-30-5-l(d), “consumed ... under a valid prescription” means simply “had a valid prescription.”
After all, if a person drives while intoxicated on a schedule I or II controlled substance—regardless whether that -driver had a valid prescription or 'obtained the drug illegally—the State’s remedy is to convict that person of driving while intoxi *1106 cated under Indiana Code Section 9-30-5-2, rather than under Indiana Code Section 9-30-5-1. And, that is precisely what the State was able to do in this case, as it obtained a Class A misdemeanor conviction of Bass for driving while intoxicated in a manner that endangered a person. See Ind. Code § 9-30-5-2(b).
Thus, I would hold the trial court erred when it both accepted that Bass had valid prescriptions for the drugs found in his body and found Bass guilty of operating a vehicle with those substances in his body under Indiana Code Section 5-30-5-1(c). As such, I would reverse the court’s guilty finding as to the Class C misdemeanor and remand for the court to correct its record to indicate Bass was acquitted of that charge. Accordingly, I dissent.[5]

. The State did not respond to Bass’s statutory construction argument. In such a circumstance, an appellate court looks only to see whether the trial court committed prima facie error, which is error at first glance. See Cox v. State, 780 N.E.2d 1150, 1162 (Ind. Ct. App. 2002) (failure to respond to an issue is akin to failing to file a brief; for claimant to succeed, he need only establish prima facie error). An appellate court may not construct arguments on the appellee's behalf, See Shepherd v. Truex, 819 N.E.2d 457, 463 (Ind. Ct. App. 2004) (if the appellate court constructs argument, it abdicates its role as “impartial tribunal”).

. I acknowledge the majority’s vacation of Bass's Class' C misdemeanor conviction on double jeopardy grounds renders moot at present the statutory construction argument on which I write. However, the majority's resolution of Bass's appeal leaves the finding of guilt as to that Class C misdemeanor on the judicial record, such that if Bass’s Class A misdemeanor conviction were overturned at some later date, the trial court could again enter a judgment of conviction on that Class C misdemeanor. See Carter v. State, 750 N.E.2d 778, 781 n.9 (Ind. 2001) (noting court should not vacate verdicts underlying lesser-included offenses not reduced to judgment so that those findings remain on the record if conviction of greater offense is ever overturned). Because I believe Bass's Class C misdemeanor conviction is impermissible as a matter of law, I cannot concur with the majority’s decision to side-step Bass’s statutory-construction argument.